IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| RUSSELL J. SWIFT and BOBBI SWIFT, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 08-3189 |
| BPI ENERGY, INC. and BPI ENERGY HOLDINGS, INC., | ) ) ) | |
| Defendants, | ) ) | |
| and | ) ) | |
| BPI ENERGY, INC. and BPI ENERGY HOLDINGS, INC., | ) ) ) | |
| Third-Party Plaintiffs, | ) ) | |
| v. | ) ) | |
| TRI-S EXCAVATING, L.L.C., | ) ) | |
| Third-Party Defendant. | ) | |

OPINION

SUE E. MYERSCOUGH, U.S. District Judge:

This matter comes before the Court on Third-Party Defendant Tri-S

1

Excavating, L.L.C.'s Motion for Summary Judgment (the "Motion") (d/e 46). For the reasons stated below, the Motion is GRANTED IN PART AND DENIED IN PART.

## I. INTRODUCTION

This case arises out of Plaintiff Russell Swift's August 28, 2006, alleged fall from a platform (a/k/a the "platform" or "Shelby #10 platform") that stood approximately five feet above the ground. The fall injured Mr. Swift's back and caused Mrs. Swift to suffer a consequential loss of consortium. Third-Party Plaintiffs BPI Energy, Inc. and BPI Energy Holdings, Inc. (collectively "BPI") built the platform to support an above-ground engine and pump. Tri-S provided personnel to operate the pump. That personnel included Mr. Swift. At all times, Mr. Swift was Tri-S's employee but he worked at the direction of BPI. Mr. and Mrs. Swift sued BPI. In turn, BPI sued Tri-S under Illinois' Contribution Act, 740 ILCS 100/1, *et seq.* (West 2002). BPI alleges that Tri-S: failed to properly train and educate Mr. Swift; failed to instruct Mr. Swift about dangers associated with the platform; failed to properly supervise

Mr. Swift; negligently hired the "inexperienced" Mr. Swift; and negligently allowed Mr. Swift to work on the platform since Mr. Swift's pre-existing "low back condition" made him unsuitable for the work.

## II.  FACTS

Tri-S hired Mr. Swift in July 2001.  Tri-S promoted Mr. Swift from an apprentice to a journeyman in 2005.  On August 28, 2008, Mr. Swift was working as a "pumper"—basically a person who maintains the pumps mounted on the platforms.  Mr. Swift was on the Shelby #10 platform when one of his feet slipped from underneath him and he lost his balance.  To avoid falling into certain belts and pulleys—which were mounted on the platform and in motion at the time—Mr. Swift jumped off the platform to the ground.  Mr. Swift suffered a back injury as a result of leaping from the platform.

During his March 23, 2010, deposition, Mr. Swift stated that he had received some training from Tri-S.  He testified that:  "We would receive on a regular basis OSHA training, dig training" which was to

ensure a competent person could make sure the dig was safe.[1]  Mr. Swift never asked anyone at Tri-S for training on how to do the pumper job, how to climb up onto the platform, or how to get down from the platform.  Mr. Swift stated that "based on [his] years of experience and training and just the fact that [he] had worked with these wells", he was "able to decide what [he] thought was the best way to get up and down."

Because the Shelby #10 platform did not have stairs, a ladder, etc. attached to it, Mr. Swift ascended and descended the platform via a portable ladder or by climbing the platform's support beams.  He further testified that he received "a lot of hands-on training from Tri-S as far as the plumbing side."  Mr. Swift stated that the training he received from Tri-S with respect to elevated platforms came during morning meetings that Tri-S employees had in the field.  There is no evidence of record to show what that training entailed.

Mr. Swift had "somewhat" low back pain prior to the August 28, 2006, incident.  He received occasional chiropractic adjustments.

---

[1] It is not clear from the pleadings what a "dig" entails or what "dig training" and "OSHA training" entails.

However, Mr. Swift did not have any restrictions on his physical activities. He did not think "there was anything about [his] medical condition prior to the incident . . . that made it unsafe for [him] to work on an elevated structure like Shelby #10."

Mr. Swift had worked on pumps and elevated structures before his fall. For several weeks prior to his fall, Mr. Swift worked daily as a pumper on the platform. He was aware there were some dangers in working with these pumps and especially on the elevated structures. In addition to lacking stairs or an attached ladder, the Shelby #10 platform had no railings and no guards covering the pulleys, belts, etc. which moved while the platform's pump was in use. Mr. Swift thought it was unsafe to work on the Shelby #10 platform and, as supervisor of a crew of workers, had told his subordinates not to work on the platform because it lacked railings.

One of Tri-S's co-owners, Steve Sanders, and Tri-S employee, Thomas Sanders, have testified that they never knew of any safety issues related to the platform prior to Mr. Swift's accident. Contrary to Steve

Sanders' testimony, Mr. Swift stated during his deposition testimony that he had "brought up" safety issues with both Steve Sanders and another Tri-S co-owner, Travis Sanders.  Mr. Swift said he had told both men about the dangers of accessing the Shelby #10 platform via climbing.   Despite Tri-S having a policy which prohibited employees from working in any unsafe area, Steve Sanders allegedly told Mr. Swift to "deal with it".  In addition to speaking with Steve Sanders and Travis Sanders about having to climb the platform, Mr. Swift alleges that he e-mailed Tri-S about safety issues prior to his fall.  A copy of the e-mail was not provided as part of the summary judgment materials.  Moreover, Steve Sanders testified at his deposition that he had never seen the e-mail.

   Tri-S contends it has no liability for Plaintiffs' injuries because it was not negligent in any fashion.  Thus, Tri-S moves for summary judgment on the various negligence theories comprising BPI's contribution claim.  BPI opposes summary judgment.  In its view, disputed material facts require a jury's determination.  The matter has

been fully briefed and is ripe for ruling.

### III.  JURISDICTION & VENUE

Because all Defendants are Nevada residents, all Plaintiffs are Illinois residents, and the amount in controversy exceeds $75,000, this Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1).  The fact that Defendants have filed a third-party complaint against Illinois resident Tri-S does not cause this Court to lose diversity jurisdiction.  See Fidelity and Deposit Co. of Maryland v. City of Sheboygan Falls, 713 F.2d 1261, 1266 (7th Cir. 1983)("it is clear that if a case is properly within the diversity jurisdiction and the defendant files a third-party complaint against a resident of the plaintiff's state the court does not lose jurisdiction over the plaintiff's claim")(citations omitted).

Personal jurisdiction exists because Defendants and Tri-S conducted business in Illinois.  See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980) (personal jurisdiction exists where a defendant "'purposefully avail[ed] itself of the privilege of conducting activities'" in the forum state), quoting Hanson v. Denckla, 357 U.S.

235, 253 (1958).  Venue exists in this judicial district because a substantial part of the events or omissions giving rise to the claim occurred here.  See 28 U.S.C. §1391(a)(2).

## IV.  STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  See Fed.R.Civ.P. 56(c); see also, Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A moving party must show that no reasonable fact-finder could return a verdict for the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986); Gleason v. Mesirow Fin., Inc., 118 F.3d 1134, 1139 (7th Cir. 1997).  Even though Defendants have failed to respond to portions of Tri-S's Motion, summary judgment cannot be entered unless Tri-S meets its burden.  See Big O Tire Dealers, Inc. v. Big O Warehouse, 741 F.2d 160, 163 (7th Cir. 1984) ("[w]here the moving party fails to meet its strict burden of proof, summary

judgment cannot be entered even if the opposing party fails to respond to the motion").

### V.  ANALYSIS

As this case is founded on diversity jurisdiction, the Court "must apply the law of the state as it believes the highest court of the state would apply it if the issue were presently before that tribunal." State Farm Mut. Auto. Ins. Co. v. Pate, 275 F.3d 666, 669 (7th Cir. 2001). Absent controlling authority from the State's highest court, federal courts exercising diversity jurisdiction may consider decisions of the State's lower courts, courts of other jurisdictions, and other persuasive authority. See Stephan v. Rocky Mountain Chocolate Factory, Inc., 129 F.3d 414, 417 (7th Cir. 1997).

Under Illinois law, the right of contribution among joint tortfeasors is governed by the Contribution Among Joint Tortfeasors Act ("Contribution Act"), 740 ILCS 100/1, et seq. (West 1996).  The Contribution Act provides that "where 2 or more persons are subject to liability in tort arising out of the same injury to person or property" a

right of contribution exists between them.  Id. at 2(a).  Accordingly, one joint tortfeasor who is liable for a plaintiff's injury can require a second joint tortfeasor to pay the second joint tortfeasor's proportionate share of plaintiff's damages based on the second joint tortfeasor's relative fault.  See Frazer v. Munsterman Inc., 527 N.E.2d 1248, 1252 (1988).

Nevertheless, "[a] contribution action cannot be maintained against a party who is not subject to liability in tort." Jodelis v. Harris, 517 N.E.2d 1055, 1057 (1987) (citation omitted).  Therefore, BPI is only entitled to relief under the Contribution Act by showing Tri-S is liable for improperly training, educating, or instructing Swift; negligently hiring or retaining Swift; or some negligence associated with Swift's prior low-back pain.

### A.   Negligent Training, Education, and Instruction

For any negligence claim, a plaintiff must establish the existence of a duty, a breach of the duty, and an injury to the plaintiff that was proximately caused by the breach.  Hills v. Bridgeview Little League Ass'n, 745 N.E.2d 1166, 1178 (2000).  Employer Tri-S contends that

BPI had a duty to properly train, educate, and instruct all BPI employees regarding the correct way to work on raised platforms.  Tri-S alleges that because BPI did not provide adequate training, education, and instruction, Mr. Swift did not take precautions when working on the platform or ascending and descending the platform.  Since Mr. Swift's injuries occurred due to his fall from a platform which—due to its lack of safety rails and guards—he arguably should not have been working on, BPI's allegations state a negligence claim.  See id.

 Tri-S tries to rebut BPI's claims by asserting that Mr. Swift's attendance at OSHA training events, field training, and prior work experience shows he received all necessary training, education, and instruction.  Moreover, Tri-S argues that it cannot be held liable to BPI, because Tri-S did not know, or have any reason to know, that Mr. Swift was working in a dangerous manner—i.e. on a raised platform that had no rails, equipment enclosures, or attached means of ascent and descent.  However, Mr. Swift contends that he e-mailed and spoke to Tri-S about safety issues prior to his accident.  Tri-S's Steve Sanders denies having

ever received Mr. Swift's e-mail and states that Tri-S had a policy that employees were not to work under dangerous conditions. Steve Sanders' denial does not foreclose the possibility that Mr. Swift e-mailed his safety concerns to Tri-S. At best, this creates a genuine issue of material fact as to whether Tri-S received notice of Mr. Swift's safety concerns.

While Tri-S alleges that it had a policy that employees were not supposed to work under dangerous conditions, and allegedly provided instruction to Tri-S employees about the hazards of working on elevated platforms, the evidence suggests Tri-S countermanded its policy and all safety training by ordering Mr. Swift to work on the platform. Furthermore, since the evidence is unclear as to what Mr. Swift's training entailed, this Court cannot find that Tri-S's instruction was adequate in the first place. Accordingly, Tri-S is not entitled to summary judgment on BPI's negligent training, education, and instruction claims. See Fed.R.Civ.P. 56(c).[2]

---

[2] Tri-S cites to Bermudez v. Martinez Trucking, 242 Ill.App. 25, 27-30 (1st Dist. 2003), for the proposition that an injured party who cannot recall the cause of his injury cannot establish proximate cause. In contrast to the injured party in Bermudez, Mr. Swift alleges that he was injured when he lost his balance and fell off the unsafe platform he was ordered to work upon. As such, Bermudez is inapposite.

B.  BPI's Negligent Hiring, Negligent Supervision, and Pre-Existing Condition Claims

The elements for negligent supervision and negligent hiring are identical. See Helfers-Beitz v. Degelman, 939 N.E.2d 1087, 1091 (Ill.App. 2010), citing Zahl, 927 N.E.2d at 283; Van Horne v. Muller, 705 N.E.2d 898, 904 (Ill. 1998). Moreover, Illinois law does not distinguish the tort of negligent supervision from the tort of negligent retention. See Zahl v. Krupa, 927 N.E.2d 262, 283 (Ill.App. 2010). Therefore, for BPI to prevail on either its negligent hiring or negligent supervision claim, BPI must plead and prove the elements set forth in Van Horne. Specifically, BPI must establish: (1) that Tri-S knew or should have known that Mr. Swift had a particular unfitness for the position so as to create a danger of harm to third persons; (2) that such particular unfitness was known or should have been known at the time of Mr. Swift's hiring; and (3) that this particular unfitness proximately caused BPI's injury. See Helfers-Beitz, 939 N.E.2d at 1091, citing Van Horne, 705 N.E.2d at 904.

BPI contends that Tri-S should not have employed Mr. Swift

13

because Mr. Swift was "inexperienced in working on" an elevated platform and inexperienced regarding "how to safely ascend and descend" the platform.  See Third Party Complaint (d/e 12) at 2, ¶ 5(d). Additionally, BPI alleges that Mr. Swift's "prior low back condition" made him an unfit employee and that Tri-S knew or should have known Mr. Swift's back condition would be aggravated by ascending and descending a raised platform.  Id., ¶ 5(e).

Even if one accepts for the sake of argument that Mr. Swift was inexperienced, BPI does not allege that anything in Mr. Swift's employment history indicates that Tri-S knew or should have known that Mr. Swift might engage in unsafe practices which would cause harm to himself or others.  As for Mr. Swift's alleged health issues, no evidence indicates that Tri-S was aware of those issues either.  While Mr. Swift had minor back pain and received occasional chiropractic adjustments before the August 28, 2006, accident, Mr. Swift had no restrictions on his ability to work.  Therefore, no evidence reflects that Mr. Swift was physically unfit—much less that Tri-S knew or should have known he

14

was physically unfit. Additionally, no evidence shows that Mr. Swift's "prior low back condition" was aggravated by routinely ascending and descending the platform. Mr. Swift's injury occurred when he jumped to the ground. Since BPI has not alleged that jumping to the ground aggravated Mr. Swift's "prior low back condition", BPI cannot hold Tri-S liable for any aggravation the jump may have caused to Mr. Swift's alleged "prior low back condition".

BPI cannot establish a *prima facie* case of negligent hiring or negligent supervision with regard to Mr. Swift's inexperience or his alleged "prior low back" condition. See Van Horne, 705 N.E.2d at 904. Summary judgment is, accordingly, proper as to these claims. See Fed.R.Civ.P. 56(c).

## VI.  CONCLUSION

THEREFORE, Third-Party Defendant Tri-S Excavating, L.L.C.'s Motion for Summary Judgment (d/e 46) is GRANTED IN PART AND DENIED IN PART.  Summary judgment is GRANTED as to Third Party Plaintiff BPI's negligent hiring, supervision, and "prior low back" (a/k/a

"pre-existing condition") claims.  Summary judgment is DENIED as to BPI's claims for negligent training, education, and instruction.

    IT IS SO ORDERED.

ENTERED: September 7, 2011

FOR THE COURT:                      s/ Sue E. Myerscough
                                       SUE E. MYERSCOUGH
                                       UNITED STATES DISTRICT JUDGE